### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| **OVBOKHAN ADUN ODIASE,** | **Civil Action No. 25-2262 (SDW)** |
| **Petitioner,** | |
| **v.** | **OPINION** |
| **WARDEN RON CHARLES, et al.,** | |
| **Respondents.** | |

**WIGENTON**, District Judge:

Presently before this Court is the petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Petition") (ECF No. 1) and motion for a temporary restraining order or preliminary injunction ("Motion") by Petitioner Ovbokhan Adun Odiase, a Nigerian citizen presently detained by Immigration and Customs Enforcement ("ICE") in the Moshannon Valley Processing Center, Pennsylvania ("Moshannon") (ECF No. 2). Respondents Essex County Correctional Facility ("ECCF") Warden Ron Charles, ICE Newark Field Office Director John Tsoukaris, Acting ICE Philadelphia Field Office Director Brian McShane, Department of Homeland Security ("DHS") Secretary Kristi Noem, and United States Attorney General Pamela Bondi oppose the Petition and Motion. (ECF No. 9).

This Court will determine the Petition and Motion on the briefs pursuant to Federal Rule of Civil Procedure 78(b). For the following reasons, Count III of Petition is dismissed as moot and Counts I and II are dismissed as premature. The Motion is denied.

## I.  BACKGROUND

Petitioner, a survivor of female genital mutilation, fled to the United States from Nigeria in October 2020 after family members began threatening to subject her daughter to the procedure

as well. (ECF No. 1 ¶¶ 22-23). She arrived in the United States on a B2 nonimmigrant visa and was authorized to remain in the United States until April 13, 2021. (*Id.* ¶ 23). Her two children arrived in the United States in March 2021 also on B2 nonimmigrant visas valid through April 13, 2021. (*Id.* ¶ 24). On October 1, 2021, DHS issued a Notice to Appear to Petitioner charging her as removable for overstaying her visa. (*Id.* ¶ 25). Shortly thereafter, Petitioner filed an application for asylum with the Immigration Court in Elizabeth, New Jersey. (*Id.* ¶ 25).

On February 20, 2024, Petitioner was arrested in New Jersey on state charges.[1] (*Id.* ¶ 29). The New Jersey court ordered Petitioner's release on non-monetary conditions on February 21, 2024. (*Id.* ¶ 30). ICE detained Petitioner upon her release from state custody, ultimately detaining her in Moshannon. (*Id.* ¶ 31). Moshannon staff placed Petitioner on suicide watch between February 23 and 26, 2024. (*Id.* ¶ 32). Staff documented that Petitioner was "yelling, screaming, crying, singing, and mumbling incoherently" during that time. (*Id.*) Petitioner remained at Moshannon through March 12, 2025. (*Id.* ¶ 38).

On January 10, 2025, an Immigration Judge in Elizabeth, New Jersey found Petitioner to be removable pursuant to 8 U.S.C. § 1227(a)(1)(B). (*Id.* ¶ 34; ECF No. 1-7 at 1). The Immigration Judge also granted Petitioner a withholding of removal to Nigeria pursuant to 8 U.S.C. § 1231(b)(3)(A). (ECF No. 1 ¶ 34; ECF No. 1-7 at 3). ICE waived appeal of that order. (ECF No. 1 ¶ 34).

On January 24, 2025, a New Jersey state court judge issued a bench warrant for Petitioner's arrest for failure to comply with her conditions of release. (*Id.* ¶ 38). On March 3, 2025, the Essex County Prosecutor's Office directed the Essex County Sheriff to retrieve Petitioner from ICE

---

[1] This Court makes no findings regarding Petitioner's criminal charges as they remain pending in state court.

custody.  (ECF No. 1-9 at 1-2).  The Sheriff's Office picked Petitioner up on March 12, 2025 and took her to ECCF.  (ECF No. 1 ¶ 38).  Petitioner appeared in state court on March 17, 2025.  (*Id.* ¶ 39).  At the hearing, the state withdrew its motion once it became apparent that Petitioner had been unable to comply with her monitoring conditions because she was in ICE custody.  (*Id.*)  The bench warrant was vacated.  (*Id.*)  Petitioner remained detained in ECCF.  (*Id.* ¶ 40).

Counsel for Petitioner filed the Petition and Motion at 1:19 a.m. on April 3, 2025.  (ECF No. 9-2 at 1).  Petitioner alleged that she was being held unlawfully at ECCF because "[o]nce the State withdrew its motion alleging violation of the monitoring conditions and [the state court] vacated the bench warrant, there ceased to be any probable cause for Ms. Odiase's arrest and detention by the State of New Jersey."  (ECF No. 1 at 25).  She also alleges that her continued ICE detention violates § 1231(a) and the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001).  (*Id.* at 22-24).  She sought immediate release from custody, an order that any future ICE detention had to be in New Jersey or Pennsylvania, as well as a declaratory judgment and attorneys' fees.  (*Id.*)  ICE retrieved Petitioner from ECCF and returned her to Moshannon at 2:05 p.m. that same day.  (Declaration of Deputy Field Office Director David C. O'Neill, ECF No. 9-3 ¶ 7).

At 5:24 p.m. on April 3, this Court issued an Order directing Respondents to show cause why a temporary restraining order or preliminary injunction requiring Petitioner's immediate release should not issue.  (ECF No. 4).  This Court also temporarily prohibited Respondents from moving Petitioner outside of Pennsylvania or New Jersey.  (*Id.* at 2-3).  Respondents filed their

answer on April 7, 2025.  (ECF No. 9).  Petitioner submitted a reply on April 8, 2025.  (ECF No. 11).

## II.  DISCUSSION

### A.  Legal Standard

#### 1.    *Petition for Writ of Habeas Corpus*

Under 28 U.S.C. § 2241(c), habeas relief may be extended to a prisoner only when she "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  A federal court has jurisdiction over such a petition if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989).

Petitioner was detained within this Court's jurisdiction and by a custodian within this Court's jurisdiction when she filed the Petition, and she asserts that her continued detention violates due process.  Therefore, this Court has jurisdiction over her claims.  *Trump v. J. G. G.*, No. 24A931, __ U.S. __, 2025 WL 1024097, at *1 (U.S. Apr. 7, 2025) (per curiam) (noting jurisdiction for "core habeas petitions" lies in the district of confinement); *see also Khalil v. Joyce*, No. 25-cv-1963, __ F. Supp. 3d __, 2025 WL 972959, at *20 (D.N.J. Apr. 1, 2025)  ("[A] habeas court that otherwise has jurisdiction over a case does not lose that jurisdiction just because the habeas petitioner has been moved out of the district.")

#### 2.    *Preliminary Injunction or Temporary Restraining Order*

Preliminary injunctive relief pursuant to Federal Rule of Civil Procedure 65 may be granted only when the moving party shows "(1) a likelihood of success on the merits; (2) that [the movant] will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such

relief." *Doe by & through Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 526 (3d Cir. 2018) (citations omitted). "A party seeking a mandatory preliminary injunction that will alter the status quo bears a particularly heavy burden in demonstrating its necessity." *Acierno v. New Castle Cnty.*, 40 F.3d 645, 653 (3d Cir. 1994) (citing *Punnett v. Carter*, 621 F.2d 578, 582 (3d Cir. 1980)).

The Third Circuit has explained that "a movant for preliminary equitable relief must meet the threshold for the first two 'most critical' factors: it must demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not) and that it is more likely than not to suffer irreparable harm in the absence of preliminary relief." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017), *as amended* (June 26, 2017). "If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id.*

## B. Analysis

Petitioner asserts that her continued detention by ICE violates the Fifth and Fourteenth Amendments, as well as § 1231 as interpreted by the Supreme Court in *Zadvydas*. (ECF No. 1 at 26). She seeks an order immediately releasing her from ICE custody and a continuing prohibition on ICE detaining her somewhere other than Pennsylvania or New Jersey. (*Id.*) Respondents assert that the Petition is moot due to Petitioner's release from ECCF and that she is otherwise not entitled to relief. (ECF No. 9 at 4-9). This Court concludes that Petitioner's challenge to her detention in

ECCF is moot and that her challenges to ICE custody in general are premature. Accordingly, Petitioner is not entitled to preliminary injunctive relief.

      *1.     Challenge to ECCF Detention*

      Petitioner asserts in Count III of the Petition that Essex County lacked the authority to detain her in ECCF after the state judge vacated the bench warrant on March 17, 2025. (ECF No. 1 at 25). Petitioner's return to Moshannon makes her challenge to the detainer holding her in ECCF moot. *See Ogunde v. Holder*, 563 F. App'x 237 (4th Cir. 2014) (per curiam) ("[B]ecause the detainer is no longer in effect, the appeal is moot."); *Drabovskiy v. U.S. Dep't of Homeland Sec.*, 573 F. App'x 93, 94 (3d Cir. 2014) ("[T]he claims relating to past immigration custody are moot; that custody ended when he was remanded to the custody of the Attorney General."); *Juan E. M. v. Decker*, No. 20-cv-4594, 2022 WL 17340669, at *2 (D.N.J. Nov. 30, 2022) ("It is well-settled that administrative action by immigration officials addressing concerns raised by an immigration detainee's habeas petition renders that petition moot."); *Bohannon v. Capozza*, No. 18-cv-1238, 2019 WL 367037, at *2 (W.D. Pa. Jan. 30, 2019) ("[T]he detainer that Petitioner alleged to have been unlawful and to have caused him to be illegally held in custody … is no longer in existence, and hence, no matter what this Court rules concerning the validity of the detainer, it is eminently clear that this habeas petition is now moot and should be dismissed as such.")

      Petitioner disputes that her Petition is moot because she was in ICE's legal custody throughout her time at ECCF. (ECF No. 11 at 2). Even assuming this is true, Count III is still moot. Petitioner challenges the validity of her detention in ECCF following the conclusion of the state court proceedings. (ECF No. 1 at 25). Neither Essex County nor ICE is presently holding Petitioner in ECCF pursuant to a detainer. This Court does not agree with Respondents that the entire Petition is moot, but it cannot grant any further relief on Count III. *See Sutton v. Rasheed*,

323 F.3d 236, 248 (3d Cir. 2003) ("An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims."), *as amended* (May 29, 2003); *see also Bohannon*, 2019 WL 367037, at *2 ("It is simply no longer possible for this Court to order Petitioner released from the now defunct detainer."); *Mayon v. Capozza*, No. 14-cv-1203, 2015 WL 4955397, at *5 (W.D. Pa. Aug. 19, 2015) ("A prisoner's transfer or release from prison moots his claims for declaratory relief since he is no longer subject to the conditions he alleges are unconstitutional.") Count III is dismissed as moot.

### 2. Due Process Challenge to ICE Custody

On January 10, 2025, an Immigration Judge issued Petitioner an order of removal to Nigeria but withheld removal pursuant to 8 U.S.C. § 1231(b)(3). (ECF No. 1-7). The parties agree that the removal order was final as of January 10, 2025. (ECF No. 1 ¶ 34; ECF No. 9-3 ¶ 5). The statute governing post-final order of removal immigration detention is 8 U.S.C. § 1231. *See Pina v. Castille*, No. 16-cv-4280, 2017 WL 935163, at *8 (D.N.J. Mar. 9, 2017) (holding § 1231(a) applied to withholding of removal case because "[w]ithholding of removal does not adjust the alien's status. As to removal, it affects not the question whether, but the question where.")

Section 1231 states in relevant part that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). This 90-day detention is mandatory. *See Zadvydas v. Davis*, 533 U.S. 678, 683 (2001) ("While removal proceedings are in progress, most aliens may be released on bond or paroled. After entry of a final removal order and during the 90-day removal period, however, aliens must be held in custody." (internal citation omitted)). ICE is not required to release the noncitizen once the removal period has expired, but "[d]ue process rights may be implicated where … there is no significant likelihood of removal in

the reasonably foreseeable future." *Cepeda v. I.N.S.*, 273 F. Supp. 2d 222, 224 (E.D.N.Y. 2003) (citing *Zadvydas*, 533 U.S. at 701).

Respondents assert that Petitioner's challenge to her post-final order detention is premature because she is still in the mandatory 90-day detention removal period.  (ECF No. 9 at 8-9).  They argue that the Court should exclude the 22 days Petitioner spent in ECCF, meaning only 61 days of the removal period had expired as of April 3, 2025.  (*Id.* at 9).  Petitioner disputes this conclusion, and this Court addresses each argument in turn.

Petitioner first argues that Respondents retain discretion to release noncitizens from detention during the 90-day removal period and that there is no justification to keep Petitioner in custody.  (ECF No. 11 at 4-5).  In support, she relies on a slide from a "Post Order Custody Review & Removal Process Training" presentation that was obtained through the Freedom of Information Act.  (ECF No. 11-1).  The slide quotes § 1231(a)(2)(A) and states that DHS "has discretion to detain or release 'final order' noncitizens during the 90-day removal period."  (*Id.* at 3).  Petitioner cites no other authority for her position that detention is discretionary during the 90-day removal period.

"When the meaning of a statute [is] at issue, the judicial role [is] to 'interpret the act of Congress, in order to ascertain the rights of the parties.'"  *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 412 (2024) (quoting *Decatur v. Paulding*, 39 U.S. 497, 503 (1840)).  The plain text of the statute says that "[d]uring the removal period, the Attorney General *shall* detain the alien." 8 U.S.C. § 1231(a)(2)(A)(emphasis added).  There is no ambiguity in this language.  *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022) ("[Section § 1231(a)(2)] provides that the Government 'shall' detain noncitizens during the statutory removal period."); *Appiah v. Lowe*, No. 3:24-cv-2222, 2025 WL 510974, at *5 (M.D. Pa. Feb. 14, 2025) ("The noncitizen must be detained

during this 90-day timeframe ….")  Therefore, this Court rejects Petitioner's argument that Respondents have the discretion to release her from detention before the removal period has expired.

Petitioner also disputes that the removal period should be tolled for the time she spent in ECCF because she has been in continuous ICE custody since February 2024 and Respondents are not making efforts to remove her from the United States.  (ECF No. 11 at 8).  "At most, the Court could discount Ms. Odiase's removal period only by the number of days she was at Essex before the resolution of her state court matter: March 12 to March 17, 2025, or five days."  (*Id.*)

Under § 1231,

The removal period begins on the latest of the following:

> (i) The date the order of removal becomes administratively final.

> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).  Petitioner's removal order became final on January 10, 2025, meaning the removal period would have ended on April 10, 2025.  However, "the removal period can be restarted multiple times by various superseding events, such as a new stay order or a detention on criminal charges."  *Gosling v. Muller*, No. 12-cv-1043, 2013 WL 868253, at *4 (D.N.J. Feb. 28, 2013).  Because Petitioner was detained in ECCF on non-immigration matters, her removal period was interrupted on March 12, 2025 and reset on April 3 when Petitioner was released from

detention or confinement in ECCF.  8 U.S.C. § 1231(a)(1)(B)(iii).  Rather than being nearly over, Petitioner's period of required detention has only started.

Petitioner urges this Court not to adopt "an extreme and illogical reading" of the statute, but courts in the Third Circuit have consistently applied § 1231(a)(1)(B) in this manner.  *See, e.g.*, *Joseph v. Betti*, No. 1:23-cv-0061, 2024 WL 3362270, at *3 (M.D. Pa. July 9, 2024) ("If, during the period of removal triggered by the then-latest of the [§ 1231(a)(1)(B) events] applicable to a particular alien, the alien is subjected to a qualifying superseding event … such superseding event starts the alien's removal period anew."); *Kudishev v. Aviles*, No. 15-cv-2545, 2015 WL 8681042, at *3 (D.N.J. Dec. 10, 2015) (citing cases); *Gosling*, 2013 WL 868253, at *4; *Michel v. I.N.S.*, 119 F. Supp. 2d 485, 498 (M.D. Pa. 2000) ("The only sensible reading of [§ 1231(a)(1)(B)] is that INS is required to effectuate the removal within 90 days of certain events, but will have another 90 days if another one of the designated events occurs at a later date.")  This Court is persuaded by the reasoning of these courts and concludes that Petitioner's detention in ECCF restarted the 90-day removal period on April 3, 2025.  Therefore, ICE's detention of Petitioner is currently mandatory under § 1231(a)(2)(A).

This Court acknowledges Petitioner has been in ICE detention since February 2024, but only the time following the final order counts towards the 90-day removal period.  Petitioner's due

process arguments are presently premature and must be dismissed. The dismissal is without prejudice to Petitioner's right to file a new § 2241 petition, if necessary, once her claims ripen.[2]

   3. *Preliminary Injunctive Relief*

Finally, this Court must consider whether Petitioner has shown that she is entitled to a preliminary injunction or temporary restraining order. This Court concludes that she has not and will deny relief.

To obtain preliminary equitable relief, Petitioner must show that she is more likely than not to suffer irreparable harm without an order granting the relief. *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). "In general, to show irreparable harm a [party] must 'demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial.'" *Acierno v. New Castle Cnty.*, 40 F.3d 645, 653 (3d Cir. 1994) (quoting *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989)). In her Motion, Petitioner argues that she will suffer irreparable harm in the form of continued unlawful incarceration. (ECF No. 2-1 at 11). Petitioner is no longer "unlawfully" detained in ECCF, and ICE is required to keep her in custody for at least 90 days for the reasons expressed above. Her transfer from ECCF also moots her arguments that she did not have access to her medications and was forced to sleep on the cell floor at ECCF. (*Id.* at 13). Petitioner's updated medical records, alleging that Moshannon is not providing her with medication, do not show that no action short of release would be sufficient to prevent irreparable constitutional injury. (ECF No. 14). The submission indicates that Moshannon is ordering the medication in response to counsel's requests. (*Id.* at 1-2). Therefore, it appears that Petitioner does not need to be released to obtain her medications. Finally, the documentation about Petitioner's mental health is mostly from 2024, (*see* ECF Nos. 1-6, 2-2, 2-3,

---

[2] This Court expresses no opinion on the merits of any future § 2241 petition.

2-4), and her declaration only addresses the conditions at ECCF, which no longer apply.  (ECF No. 2-5 ¶ 6).  Therefore, this Court concludes that Petitioner has not shown that she will suffer irreparable harm without preliminary injunctive relief.

Petitioner also has not shown that she is likely to succeed on the merits of the Petition as filed.  As discussed in depth *supra*, Petitioner's due process challenges to her ICE detention are premature.  Courts in this District have routinely dismissed § 2241 immigration petitions for being premature.  *See, e.g.*, *Fabian A. v. Dep't of Homeland Sec.*, No. 21-cv-1384, 2021 WL 3486905, at *2 (D.N.J. Aug. 9, 2021) ("Petitioner's challenge to the length of his detention is therefore premature and provides no basis for habeas relief."); *Alan Abiel Islas O. v. Green*, No. 18-cv-08020, 2018 WL 10562958, at *2 (D.N.J. Sept. 13, 2018) ("Accordingly, Petitioner's complaints regarding his post-removal order detention are premature, and the Petition shall be dismissed without prejudice on that basis."); *Forbes v. Edwards*, No. 18-cv-0249, 2018 WL 515880, at *2 (D.N.J. Jan. 22, 2018) ("Because just over thirty days have passed since the entry of her final order of removal, Petitioner is well within the removal period during which the Government is required to detain her.  … [A]ny challenge to that detention at this time is premature.  Petitioner's current petition must therefore be dismissed.")  Accordingly, Petitioner is not likely to succeed on this Petition.[3]

This Court denies preliminary injunctive relief as Petitioner has not satisfied the two gateway factors.  *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017).

---

[3] This Court emphasizes that it reaches this conclusion because the Petition presently before this Court is premature.  This Court expresses no opinion on whether Petitioner is likely to succeed on a petition filed after her claims ripen.

### III.  CONCLUSION

For the reasons stated above, this Court will dismiss Count III of the Petition as moot and dismiss Counts I and II as premature.  The dismissal is without prejudice to Petitioner's right to file a new § 2241 petition once her claims ripen.

An appropriate order follows.

Date: _April 22, 2025_____, 2025

_____
Hon. Susan D. Wigenton
United States District Judge